STEVENSON, J.
 

 Defendant, Wes Dante McGee, appeals his convictions for first degree murder with a weapon, attempted first degree murder with a weapon, burglary of a dwelling with assault or battery and robbery with a deadly weapon and, in a consolidated case, possession of cocaine. Defendant has raised four issues. We affirm and write only to address Defendant’s argument regarding improper prosecutorial closing remarks.
 

 This case stems from the murder of Jane Tackaberry and attempted murder of her then six-year-old grandson, Elijah Tackaberry. Jane Tackaberry suffered multiple stab wounds and a blow to the head. A shoeprint was visible on the side of Jane Tackaberry’s face. Elijah was stabbed multiple times. They were discovered by John Tackaberry, Jane Tackaber-ry’s son and Elijah’s father, who resided in the home. Prior to the murder, John Tackaberry had spoken to Defendant’s co-defendant and informed her that he would be out for the evening.
 

 The police recovered several items from the Tackaberry home, including a black duffle bag containing a butcher knife and a meat cleaver, two sets of green, bloody latex gloves and bloody Reebok shoeprints that were visible inside the home. Elijah’s DNA was found on some of these items. A DNA mixture was found on a pair of bloody boots recovered from the co-defendant’s home, and neither Elijah nor Jane Tackaberry could be excluded as contributors. Defendant’s fingerprint was found on one of the latex gloves. Finally, blood stains were found on the passenger side of the co-defendant’s vehicle.
 

 Defendant was subsequently apprehended wearing clothing reported stolen by John Tackaberry. Bloodstains were found on clothing and a pair of Reebok shoes recovered from a trashcan at Defendant’s home. Defendant gave a statement to the police indicating that he rode in co-defendant’s vehicle to the Tackaberry residence and entered the home. Defendant denied stabbing anyone and characterized the incident as a “robbery went bad.” Defendant admitted to grabbing Jane Tacka-berry’s purse and carrying Elijah from the
 
 *839
 
 bedroom to his co-defendant in the front room.
 

 During closing argument, the Prosecutor placed a picture of the shoeprint on Jane Tackaberry’s face on a projector. The Prosecutor then argued:
 

 What I first want you to look at, let’s look at the left side of her face and— what I want you to look at is the channel that is going along here, it’s a parallel channel and it’s a little curve. That’s the first thing I want you to look at.
 

 [[Image here]]
 

 Now, let’s take a look at the black Reeboks. Look at the heel of the black Reeboks. Look at the hole of the black Reeboks. Again, you get to take them back there and there are photos of them and everything, but you look at them with your own naked eyes.
 

 [[Image here]]
 

 Look at the channels that run across the word Reeboks, you could see how they’re swirly channels, they’re curved.
 

 Now, I want you to look, look at the curved channels, and it’s hard to see on here. You can see some here a little bit more. Look at the — there are actually two of them, they’re running down and like this, not once, I mean, she’s getting stomped on by, by the guy wearing these shoes, right by him. That’s what he’s doing to her.
 

 Defendant was found guilty and sentenced to four consecutive terms of life imprisonment. Defendant now argues on appeal that the Prosecutor improperly acted as an expert witness and opined that the shoeprint on Jane Tackaberry’s face matched the bottom of the Reebok shoe found at Defendant’s home. A trial court’s ruling on prosecutorial closing comments is reviewed for an abuse of discretion.
 
 See Barrios v. State,
 
 50 So.3d 708, 710 (Fla. 4th DCA 2010). “The purpose of closing argument is to present a review of the evidence and suggestions for drawing reasonable inferences from the evidence.”
 
 Fleurimond v. State,
 
 10 So.3d 1140, 1148 (Fla. 3d DCA 2009).
 

 The Prosecutor’s comments did not constitute error. The Prosecutor began by describing two pieces of evidence, drawing the juror’s attention to certain details in the shoeprint and the Reebok shoe. When read in context, the final comment that Jane Tackaberry was “getting stomped on by, by the guy wearing these shoes” is better interpreted as an inference the State believed was supported by this evidence, rather than an expert opinion. Given this context, the comment was permissible. We also note that an expert opinion was not needed to draw the comparison between the shoe print on Jane Tackaber-ry’s face and the Reebok shoe.
 
 See White v. State,
 
 375 So.2d 622, 623 (Fla. 4th DCA 1979) (lay witness competent to testify that footprint found at crime scene was “size 10, smooth, without printed matter and had a two inch heel” and that the defendant’s shoe was also “a size 10, smooth, without any writing on it, and a two inch heel”);
 
 see also Irvin v. State,
 
 66 So.2d 288, 296 (Fla.1953) (no error in permitting lay witness to testify that shoeprint found at scene was made by shoes worn by defendant).
 

 We have examined the remaining issues and find no error. Accordingly, we affirm Defendant’s convictions.
 

 Affirmed.
 

 MAY, C.J., and CIKLIN, J., concur.