Earvil WATSON, Petitioner–Appellee,

v.

Althea CAMP, Warden, Graham Correctional Center, Respondent–Appellant.

No. 87–2132.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 25, 1988.
Decided May 31, 1988.

David E. Bindi, Atty. Gen. of Illinois, Chicago, Ill., for respondent-appellant.

Lawrence Bapst, Office of the State Appellate Defender, Springfield, Ill., for petitioner-appellee.

Before CUDAHY, FLAUM and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Petitioner was convicted in Illinois state court of residential burglary and theft; he was sentenced to fifteen years imprisonment. At Watson's trial, the court improperly denied him a peremptory challenge. Illinois law provides that each party shall have an additional peremptory challenge for each alternate juror. Ill.Rev.Stat. ch. 38, para. 115–4(g) (1985).[1] Since one alternate was selected at Watson's trial each party was entitled to one extra peremptory challenge. Unfortunately, the trial court erred, denying Watson's request for an additional challenge.

That error would have been of no consequence had the alternate juror not been seated; but on the trial's second day defense counsel learned that one of the regular jurors was a deputy sheriff. The court, recognizing its prior mistake, first offered to let the defense use its extra peremptory challenge against the deputy. When the state's attorney argued that the additional peremptory could only be used against an alternate juror, the court dismissed the deputy for cause and seated the alternate. The judge refused to let Watson use his final peremptory challenge to dismiss the alternate juror. The defendant immediately moved for a mistrial on the basis of the statutory violation. The court denied the motion and Watson was eventually convicted. On appeal, the Illinois Appellate Court affirmed the conviction, holding that while denial of a peremptory challenge is ordinarily reversible error, here that error was "waived" because "proof of guilt is so overwhelming that no other verdict could reasonably have been reached." *People v. Watson*, No. 4–84–0688, mem. op. at 3–4 (Ill.App. July 9, 1985) [135 Ill.App.3d 1169, 100 Ill.Dec. 214, 496 N.E.2d 1279 (table)]. The Illinois Supreme Court denied leave to appeal.

On September 30, 1986, Watson filed this petition for habeas corpus relief under 28 U.S.C. § 2254 (1982). Judge Mills granted the writ. He first held that "[t]he statutory right to a peremptory challenge is an essential part of a trial by impartial jury." *Watson v. Camp*, 663 F.Supp. 1039, 1042 (C.D.Ill.1987). Therefore any diminution of the statutory right to peremptory challenges violates the sixth amendment, applied to the states through the fourteenth amendment's due process clause. The court also held that the petitioner need not show prejudice, because a long line of federal cases has held that such a showing is virtually impossible given the arbitrary nature and essential indeterminacy of the peremptory challenge privilege. *See, e.g., Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) ("The denial or impairment of the right is reversible error without a showing of prejudice."), *overruled in part, Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The warden appeals both determinations.

To decide this case we must examine the unique nature of the peremptory challenge. "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Swain*, 380 U.S. at 220, 85 S.Ct. at 836. The device has several purposes. Its function is to "eliminate extremes of partiality on both sides" and "to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise." *Id.* at 219, 85 S.Ct. at 835. Also, it obviates any worry that a judge will become prejudiced against counsel because of, for example, many marginally justified "for cause" challenges of the venire. *See, e.g., Lewis v.*

---

**1.** The section states in pertinent part:
  After the jury is impaneled and sworn the court may direct the selection of 2 alternate jurors who shall take the same oath as the regular jurors. Each party shall have one additional peremptory challenge for each alternate juror.
  Ill.Rev.Stat. ch. 38, para. 115–4(g).

*United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892).

The peremptory challenge has a long and honored history in Anglo–American jurisprudence. It was an important part of trial by jury in the English common law and quickly became firmly rooted in the American soil. *See Swain,* 380 U.S. at 212–17, 85 S.Ct. at 831–34 (discussing history of peremptory challenges); *see also Batson,* 476 U.S. at 118–22, 106 S.Ct. at 1734–36 (Burger, C.J., dissenting) (same). It remains a firm part of the criminal justice process in all fifty states. *See* Note, *Rethinking Limitations on the Peremptory Challenge,* 85 Colum.L.Rev. 1357, 1359–60 (1985).

The peremptory challenge has not been without its critics, perhaps most notably Justice Thurgood Marshall. *See Batson,* 476 U.S. at 102–08, 106 S.Ct. at 1726–29 (concurring opinion) (urging total abolition of peremptories to prevent racial discrimination in jury selection); *see also Swain,* 380 U.S. at 216 n. 19, 85 S.Ct. at 834 n. 19 (collecting authorities). Still, it is generally recognized as an important safeguard and the right, as provided by statute, is zealously protected by the courts. Indeed, the Court has called it "one of the most important of the rights secured to the accused." *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894).

Yet an "important" right is not necessarily a constitutional guarantee. *See Hines v. Enomoto,* 658 F.2d 667, 677 (9th Cir. 1981) (Norris, J., dissenting). We certainly do not denigrate the importance of the statutory right of peremptory challenge by shifting the focus of our inquiry to the question whether that right, in its full statutory elaboration, is constitutionally protected. The writ is *properly issued only if* the *Constitution* required the state to afford Watson an additional peremptory challenge.

The Constitution does not explicitly mention peremptory challenges. Nonetheless, petitioner correctly notes that many of the rights now held to be protected by the due process clauses and other constitutional provisions are not explicitly articulated in the document. *See, e.g., In re Winship,* 397 U.S. 358, 368, 90 S.Ct. 1068, 1074, 25 L.Ed.2d 368 (1970) (holding that due process requires proof beyond a reasonable doubt for juvenile delinquency determination based on criminal conduct). We must decide whether the right to a specific number of peremptory challenges is an implicit attribute of due process or of the right to an impartial jury.

The Court's early statements on this question were neither clear nor consistent. Thus, in *Lewis,* 146 U.S. at 376, 13 S.Ct. at 138, the Court stated: "The right of challenge comes from the common law with the trial by jury itself, and has always been held essential to the fairness of trial by jury." Two years later the Court ruled that "any system for the empanelling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of peremptory challenge, must be condemned." *St. Clair v. United States,* 154 U.S. 134, 148, 14 S.Ct. 1002, 1008, 38 L.Ed. 936 (1894). This language seems to support the result reached below.

The Court, however, never explicitly found a constitutional anchor for the right in those cases and soon came out firmly against such a foundation. Indeed, in *St. Clair* itself the Court started to pull back, saying that peremptory challenge procedures would be upheld so long as they were "not inconsistent with any settled principle of criminal law" or with the right to select an impartial jury. *Id.* The swing was completed in *Stilson v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 29, 63 L.Ed. 1154 (1919), where the Court held: "There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges to defendants in criminal cases; trial by an impartial jury is all that is secured." That holding was reaffirmed in *Swain,* 380 U.S. at 219, 85 S.Ct. at 835, and again reiterated in *Batson,* 476 U.S. at 91, 106 S.Ct. at 1720. *See also id.* at 108, 106 S.Ct. at 1729 (Marshall, J., concurring) ("this Court has ... repeatedly stated that the right of peremptory challenge is not of constitutional magnitude, and may be withheld altogether with-

out impairing the constitutional guarantee of impartial jury and fair trial").

▮ The lesson of these cases is that there is no general constitutional right to a particular number of peremptory challenges. We must add a qualifier to that statement: certainly a state's peremptory challenge scheme must not, in form or application, violate explicit constitutional guarantees. *See, e.g., Batson,* 476 U.S. 79, 106 S.Ct. 1712 (equal protection); *Stilson,* 250 U.S. at 586, 40 S.Ct. at 29 (right to impartial jury). But there is no such allegation with regard to the Illinois statute's application here: the judge misread it in denying *both* sides one of their eleven challenges (although the state did not seek to exercise an additional challenge). The infringement in this case is actually less egregious than that found not to violate the Constitution in *Workman v. Cardwell,* 471 F.2d 909 (6th Cir.1972) (per curiam), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2762, 37 L.Ed.2d 161 (1973). There the state court had improperly disallowed a "for cause" challenge, forcing the defendant to use one of his peremptory challenges. *Id.* at 911. In effect, the state court in *Workman* by its error gave the prosecution one more peremptory challenge than the defense. Here, by contrast, there is no inequity in the number of peremptory challenges allowed each side. We need not decide the vitality of *Workman* in this circuit; we simply hold that under the facts of this case there is no constitutional violation.

That holding might be unquestioned but for the Ninth Circuit's possibly conflicting decision in *Hines v. Enomoto,* 658 F.2d 667 (9th Cir.1981). In that case, a divided panel explicitly rejected *Workman* and found a violation of due process where the trial court improperly denied a defendant half of the twenty-six peremptory challenges allotted by statute. *Id.* at 672. The court seemed especially concerned with the magnitude of the deprivation.

> Because an outright denial of half the number of allotted peremptories may vitally affect the integrity of the jury selection process and, by implication, the fairness of the trial itself, we hold that Hines has stated a claim for federal habeas relief.
>
> We do not hold that the Constitution requires the states to afford criminal defendants a particular number of peremptory challenges.... Our decision rests on the inescapable conclusion that a defendant who has been denied half of the peremptories given by statute may have been denied the right to assure the empaneling of an impartial jury.

*Id.* (footnote omitted). As with *Workman,* we need not decide whether to follow *Hines* in this circuit, except to say that we do not read it as broadly as petitioner, who believes it compels issuance of the writ in this case. It is true that both here and in *Hines* criminal defendants were denied statutorily required peremptories. But there the similarities cease. In *Hines,* the violation was so great that two judges felt it implicated the right to an impartial jury. Here there can be no such inference. Denial of one peremptory challenge to each side, when a number of others have been provided, simply does not violate the Constitution by casting doubt on the impartiality of an otherwise validly constituted jury.[2]

Because we reverse Judge Mills' finding of a constitutional violation, we do not express any opinion on his second holding, that such a violation results in *per se* reversal. The decision to grant the writ must be reversed.

REVERSED.

**2.** Besides *Hines* and *Workman,* we have found only one other appellate case on this point. In *Celestine v. Blackburn,* 750 F.2d 353, 360 (5th Cir.1984), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3490, 87 L.Ed.2d 624 (1985), the court explicitly left open the question whether impairment of the statutory right to peremptories violates the Constitution. In doing so, the court clarified its holding in *United States v. Nell,* 526 F.2d 1223

(5th Cir.1976), which reversed a conviction on direct appeal because improper denial of a "for cause" challenge resulted in loss of a peremptory challenge. *Nell* said reversal was automatic, *id.* at 1229, but never stated the basis for the right. *Celestine* made clear that the right of automatic reversal in *Nell* is based in common law and not necessarily the Constitution. *Celestine,* 750 F.2d at 360.