Michael IRWIN, Petitioner,

v.

Harry K. SINGLETARY, Jr., Respondent.

No. 93–1010–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

April 13, 1995.

Michael A. Irwin, Starke, FL, pro se.

Stephen Allan Baker, Atty. General's Office, Dept. of Legal Affairs, Tampa, FL, for respondent.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on Petitioner's petition for writ of habeas corpus (Docket No. 1), and Respondent's motion to dismiss (Docket No. 8).

## PROCEDURAL HISTORY

On November 17, 1983, the State Attorney for the Sixth Judicial Circuit, in and for Pinellas County, Florida, filed an indictment against Petitioner, Michael Irwin. The indictment charged Petitioner with a sexual battery on Anne Marie Irwin, his two and a half year old sister. The sexual battery allegedly occurred between March 1, 1983, and July 18, 1983 (R5–6).[1] Petitioner entered a not guilty plea (R7) and was tried before a jury from July 25, 1984, to July 28, 1984 (R441, 633, 785, 959). On July 28, 1984, the jury returned a verdict finding Petitioner guilty as charged (R76).

On August 6, 1984, Petitioner filed a Motion for New Trial. Petitioner subsequently filed an Amended Motion for New Trial on September 12, 1984. The circuit court denied the motion on October 5, 1984 (R102). On October 9, 1984, the circuit court sentenced Petitioner to life imprisonment with twenty-five (25) years minimum mandatory and credit for four hundred forty-eight (448) days time served (R103–07).

On October 18, 1984, Petitioner filed his notice of appeal (R109). Petitioner raised five grounds on appeal:

Ground One: The trial court committed reversible error when it refused to allow Petitioner to backstrike a prospective juror prior to the swearing of the jury panel.

Ground Two: The trial court erred when it denied Petitioner's motion in limine and allowed the use of hearsay of the incompetent child victim as repeated by the mother and Detective William Goatcher.

Ground Three: The trial court erred in overruling Petitioner's objections to a comment on his right to remain silent.

Ground Four: The trial court erred in not granting a mistrial based on prejudicial comments.

Ground Five: The trial court erred in denying Petitioner's motion for new trial based on newly discovered evidence.

On October 25, 1985, the Second District Court of Appeal issued a per curiam affirmance of Petitioner's conviction. *Irwin v. State*, 479 So.2d 122 (Fla. 2d DCA 1985). In its opinion, the district court of appeal cited to *Rivers v. State*, 458 So.2d 762 (Fla.1984) (holding that trial court's non-compliance with rule that provides that defendant may challenge a prospective juror before the juror is sworn was harmless error where defendant did not subsequently attempt to backstrike any prospective jurors and where evidence of defendant's guilt was overwhelming), and *Jones v. State*, 332 So.2d 615 (Fla. 1976) (holding that noncompliance with rule providing that defendant may challenge a prospective juror up to the time he or she is sworn to try the case was harmless error where the evidence, though circumstantial, was so clear and convincing as to leave no reasonable doubt that defendant was guilty).[2]

Thereafter, Petitioner alleges that he filed an application for a writ of habeas corpus with the United States District Court for the Southern District of Florida, raising the same grounds that he raised on appeal. On November 14, 1988, the court allegedly dismissed Petitioner's application for failure to prosecute.

Petitioner filed his present federal petition for writ of habeas corpus on June 21, 1993. Petitioner raises the same grounds that he raised in his appeal with the exception of ground two, regarding the trial court's denial of his motion in limine, which Petitioner has not included in the petition. Respondent

---

1. "R" refers to the record of Petitioner's criminal trial in the Circuit Court for Pinellas County; Gerard J. O'Brien, Judge.

2. In *Gilliam v. State*, 514 So.2d 1098 (Fla.1987), the Florida Supreme Court receded from its holdings in *Rivers* and *Jones*. The court held that, under Florida Rule of Criminal Procedure 3.310, a defendant may challenge a prospective juror before the jury is sworn, and the denial of this right is per se reversible error. *Id.*

does not challenge exhaustion of state court remedies.

Having reviewed the record, the Court has determined that Petitioner has failed to raise any claim that merits habeas relief for the following reasons.

## DISCUSSION

Petitioner raises four grounds for federal habeas relief in his Petition:

Ground One: The trial court committed reversible error when it refused to allow Petitioner to backstrike a prospective juror prior to the swearing of the jury panel.

In support of Ground One: The trial court allowed backstriking during the selection of the initial six prospective jurors, but refused to allow backstriking during the selection of the alternate juror. Before the swearing of the jury, the trial court excused one of the prospective jurors and filled the vacant spot with the alternate juror. Over the Petitioner's objection, the trial court refused to allow Petitioner to use one of his remaining strikes on the new prospective juror.

Ground Two: The trial court erred in overruling Petitioner's objections to a comment on his right to remain silent.

In support of Ground Two: Detective William Goatcher examined Petitioner shortly after his arrest. Detective Goatcher testified at trial that he ended the examination when Petitioner became uncooperative. Petitioner alleges that this testimony amounted to a comment on his right to remain silent.

Ground Three: The trial court erred in not granting a mistrial based on prejudicial comments.

In support of Ground Three: At trial, Respondent repeatedly informed the jury that the victim would not be testifying due to her young age, referred to other sexual batteries by stating that penetration was recurrent, bolstered the credibility of a State witness, and commented about other babies being raped in the world. Petitioner submits that the combined effect of these prejudicial comments was the denial of his right to a fair trial.

Ground Four: The trial court erred in denying Petitioner's motion for new trial based on newly discovered evidence.

In support of Ground Four: Petitioner alleges that Mrs. Irwin, during her deposition, failed to disclose that she had taken the victim to see a family doctor almost three months after Petitioner's arrest. Petitioner submits that if the Irwin's family doctor had testified as to the recurring problem of redness in the victim's genital area, months after Petitioner's arrest, there would not have been enough evidence against him to result in a conviction.

### Ground One

Petitioner claims that the trial court erred when it refused to allow him to backstrike a prospective juror prior to the swearing of the jury panel. During voir dire, Petitioner exercised six (6) of his ten (10) possible peremptory challenges (R585, 590, 685, 687). Six (6) prospective jurors were chosen by the end of the day of July 25, 1984. The court announced the names of the six (6) prospective jurors and subsequently selected Jose Perez as an alternate juror (R680–90). Although the court had allowed backstrikes during the selection of the initial six (6) prospective jurors (R583, 590), it refused to allow backstrikes during the selection of the alternate juror (R688–89). Neither party objected to the selection of Jose Perez as the alternate juror (R705). The court then excused the jurors without swearing them in (705–07).

The next morning, the court was advised that one of the prospective jurors had read a newspaper article regarding Petitioner's case (R743). Because the article contained information that would be inadmissible at trial, the court excused the prospective juror and seated Mr. Perez in his place (R754). At that time, Petitioner attempted to exercise a peremptory challenge on Mr. Perez (R754). Over Petitioner's objections, the court ruled that it would not allow the strike as the court had completed the jury selection process on

the previous day (R754, 762, 772). The court then swore in the jury panel (R775, 780–81).

Petitioner claims that he had the right to peremptorily challenge any juror, including Mr. Perez, up until the time that the jury was sworn.[3] *See Jackson v. State,* 464 So.2d 1181 (Fla.1985) (holding that a trial judge has no right to infringe upon a defendant's right to challenge a juror prior to the time that the jury is sworn). This Court must determine whether the trial court denied Petitioner his Sixth Amendment guarantee to an impartial jury when it refused to allow Petitioner a statutorily mandated peremptory challenge. This Court concludes that it did not.

The Seventh Circuit Court of Appeals dealt with this precise question in *Watson v. Camp,* 848 F.2d 89, 92 (7th Cir.1988), *cert. denied,* 488 U.S. 863, 109 S.Ct. 164, 102 L.Ed.2d 134 (1988).[4] In *Watson,* the trial court denied the defendant a peremptory challenge in violation of an Illinois law which provided that each party should have an additional peremptory challenge for each alternate juror. *Id.* at 90. Since one alternate was selected, each party was entitled to one extra peremptory challenge. *Id.* However, the trial court denied the defendant's request for an additional challenge. *Id.* That error would have been of no consequence had the alternate juror not been seated. However, on the second day of trial, circumstances forced the court to dismiss a juror for cause and seat one of the alternate jurors. *Id.* The judge refused to let the defendant use his final peremptory challenge to dismiss the alternate juror. *Id.*

After the state appellate court affirmed the conviction, the defendant filed a petition for habeas corpus relief under 28 U.S.C. § 2254. *Id.* at 90. The district court granted the writ, holding that "any diminution of the statutory right to peremptory challenges violates the sixth amendment, applied to the states through the fourteenth amendment's due process clause." *Id.*

The Seventh Circuit Court of Appeals reversed the district court's decision. The court, while recognizing that there is no general constitutional right to a particular number of peremptory challenges, held that the denial of one peremptory challenge to each side, when a number of others have been provided, simply does not violate the Constitution by casting doubt on the impartiality of an otherwise validly constituted jury. *Id.* at 92. The case at hand is directly analogous to *Watson.* The trial court, contrary to Rule 3.310, denied Petitioner's request to utilize one of his challenges on Mr. Perez when the court seated Mr. Perez prior to swearing in the jury.

■ The effect of the trial court's actions was to deny Petitioner the use of one of his remaining peremptory challenges. While this may constitute a violation of state law, under the reasoning of *Watson,* the violation simply does not rise to Constitutional proportions. During the jury selection process, Petitioner was able to utilize a number of peremptory challenges. Thus, the trial court's denial of one peremptory challenge will not cast doubt on the impartiality of an otherwise validly constituted jury. Petitioner is not entitled to habeas relief on ground one.

### Ground Two

Petitioner claims that the trial court erred in overruling his objections to a comment on

---

**3.** Florida Rule of Criminal Procedure 3.310 provides: "The state or defendant may challenge an individual prospective juror before the juror is sworn to try the cause; except that the court may, for good cause, permit it to be made after the juror is sworn, but before any evidence is presented."

**4.** The Eleventh Circuit has not considered this question. However, in *United States v. Nell,* 526 F.2d 1223, 1229 (5th Cir.1976), a direct federal appeal, the court held that "as a general rule it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory chal-

lenges." The *Nell* court's ruling did not rest on constitutional grounds, but on the common law principle that the "denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice." *Id.,* (citing *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965)). However, in *Celestine v. Blackburn,* 750 F.2d 353, 360 (5th Cir.1984), the new Fifth Circuit clarified the *Nell* court's holding and noted that "In § 2254 proceedings, then, the question of whether 'impairment of the right' contravenes a defendant's Sixth Amendment right to an impartial jury remains an open one."

his right to remain silent. At trial, Detective William Goatcher testified that he was assigned to the juvenile sexual crimes unit at the time of Petitioner's arrest (R1204–05). Detective Goatcher examined Petitioner shortly after his arrest (R1242, 1244). Detective Goatcher testified at trial about statements made by Petitioner during the examination, as follows:

Assistant State Attorney: What was [Petitioner's] demeanor through the interview? You state you were trying to get him to relax. How was he acting?

Detective Goatcher: At first I didn't detect any problems, however, later on into the interview he became, what I would describe as aggressive. He was almost getting angry. At that point I realized his answers weren't coming as freely as they had before. He wasn't cooperating with me. And shortly thereafter, the interview was concluded. (R1248).

Petitioner objected to these statements (R1248–51). The trial court overruled the objection and denied Petitioner's motion for a mistrial (R1250–51).

Petitioner argues that, during the examination, he exhibited his refusal to answer any more questions through his body language and by not cooperating. Appellant's Brief at 30. Petitioner further argues that the detective, by describing Petitioner's refusal to cooperate further in answering questions, made a comment that the jury could interpret as referring to Petitioner's right to remain silent. *Id.* Petitioner submits that this is a serious constitutional error which is not subject to the harmless error doctrine. *Id.*

Petitioner's argument is without merit. In *Coleman v. Singletary,* 30 F.3d 1420, 1424 (11th Cir.1994), the court held that "[a] suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent."

Such was the case in *Jacobs v. Singletary,* 952 F.2d 1282, 1292–93 (11th Cir.1992), where the defendant invoked her right to remain silent by refusing to speak.

█ In *Jacobs,* the court held that "by repeatedly refusing to speak at all to [the officer], even to the point of not giving her name, [the suspect] provided at least an equivocal or ambiguous indication that she wished to remain silent." *Id.; See United States v. Ramsey,* 992 F.2d 301, 305 (11th Cir.1993) (holding that defendant had equivocally invoked his right to remain silent by looking at the officer and looking away when the officer initially asked him if he wanted to make a statement, and the officer understood the defendant's response to mean that he did not want to talk). That is not the case here. The Petitioner simply became uncooperative and the detective ended the questioning. Therefore, Petitioner's actions were insufficiently clear to invoke his right to remain silent and his point is without merit. Petitioner is not entitled to habeas relief on ground two.

### *Ground Three* [5]

Petitioner claims that the trial court erred by: (1) not granting a mistrial based on comments made by the prosecutor and (2) admitting evidence regarding the recurrence of the sexual attacks. The Court will take each of these issues in turn.

### I. PROSECUTOR'S COMMENTS

█ Petitioner claims that the trial court erred in not granting a mistrial based on comments made by the prosecutor. Petitioner claims that the prosecutor: (1) repeatedly informed the jury that the victim would not be testifying because of her young age and (2) made several impermissible comments during closing argument. Petitioner argues that the combined effect of the comments

---

5. In reviewing Petitioner's claims, the Court has relied to some extent on the arguments set forth by the parties in their appellate briefs to the Florida Second District Court of Appeal. In reviewing the parties' arguments regarding Ground Three, the Court discovered that page nine of Respondent's appellate brief, regarding the issues in Ground Three, was missing. Thereafter, the Court requested that Respondent provide the Court with another copy of page nine. On March 22, 1995, Respondent provided another copy of page nine and the Court has incorporated it into the record.

rendered his trial fundamentally unfair within the meaning of the due process clause of the Fourteenth Amendment. To prevail on his claim of prosecutorial misconduct in this habeas case, Petitioner must show that the prosecutor's actions were so egregious as to render the trial fundamentally unfair. *Hance v. Zant*, 696 F.2d 940, 950 (11th Cir. 1983) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The asserted error must be one of constitutional magnitude. *Houston v. Estelle*, 569 F.2d 372, 377 (5th Cir.1978). This determination should be made by considering the totality of the circumstances, and the prosecutor's conduct should be evaluated in the context of the entire trial. *Id.*

### a. References to Victim's Unavailability

Petitioner argues that the prosecutor repeatedly informed the jury, throughout voir dire (R493, 497, 628, 630), that the victim would not be testifying because of her young age.[6] Petitioner submits that it was improper for the prosecutor to suggest that there were witnesses who were available and then give the reason for their not being called.

■ It should be noted that this is not a case like *United States v. Humer*, 542 F.2d 254, 255 (5th Cir.1976), where the court held that "the prosecutor clearly had no business intimating that there were corroborating witnesses whose testimony would not be adduced in open court."[7] In the case at hand,

the State could not call the victim because of her young age.[8] Therefore, the State, by informing the jury that the victim would not testify, was not intimating that the victim, if available, would have been able to confirm some or all of the State's case. Rather, the prosecutor was simply explaining to the jury why they would not hear from the victim during the trial. This is supported by the fact that the trial court apparently instructed the jury that the victim was too young to offer her testimony before the jury.[9] Therefore, it is clear that these comments did not rise to the level of denying Petitioner a fair trial.

### b. Prosecutor's Comments During Closing Argument

Petitioner claims that the prosecutor: (1) impermissibly vouched for a state witness' credibility, (2) attacked defense counsel's tactics, and (3) improperly appealed to jury sympathy.

■ First, Petitioner argues that the prosecutor impermissibly vouched for Detective William Goatcher's credibility during his closing argument. The prosecutor stated:

I don't think Detective Goatcher is going to come in here after fifteen years on a police force and risk his entire credibility, no less his job, no less his freedom by committing perjury to put an innocent man in jail.

of the prosecutor's remarks, they did not entitle the defendant to a new trial. *Id.* The court reasoned that, under the circumstances, it was safe to conclude that the impermissible remarks were harmless beyond a reasonable doubt. *Id.*

---

**6.** The prosecutor made only one reference to the victim's unavailability after the jury was sworn and that was during the prosecutor's initial closing remarks (R1355). Petitioner did not object to the statement and, therefore, argument as to the statement was not preserved for this Court's review. *See Magwood v. Smith*, 791 F.2d 1438 (11th Cir.1986) (holding that defendant's failure to object to prosecutor's statement to jury during final argument precluded federal habeas corpus review).

**7.** In *Humer*, the prosecutor told the jury: "You will find throughout the testimony that during the course of this [drug] operation at least one or two people were involved in almost every phase of it and as a consequence I am going to instead of having each witness, which will be maybe two or three who can testify to the same thing, I will only have only one witness testifying to that series of events." *Humer*, 542 F.2d at 255. The court held that although it strongly disapproved

**8.** The victim was only three and one half years old at the time of the trial and the trial court determined that she was not qualified to testify (R422).

**9.** During the jury instruction conference, the State submitted a specially prepared jury instruction which was approved by the trial court and included as Instruction 2.05(a), which read: "Victim, Annie Marie Irwin, is not available to either side as a witness. The jury should draw no inference from her absence." This instruction had basically the same effect as the prosecutor's statements during voir dire, of which Petitioner now complains.

(R1382–83). In *Kennedy v. Dugger,* 933 F.2d 905, 914 (11th Cir.1991), *cert. denied, Kennedy v. Singletary,* 502 U.S. 1066, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992), the prosecutor made a similar statement during his closing argument to the jury:

> But I'll say this to you in all sincerity: If you believe that Officer Moneyhun walked in this courtroom, got up there on that stand and took an oath before you and made a solemn pact with God to tell the truth, if you believe he did that, and came in here and lied against that Defendant and made up all that statement that he recited to you, then, I say you should acquit him if that's what you believe because we've got the worst, most corrupt law enforcement agencies in this State if that happened, and, I don't believe it.

Although the court determined that the prosecutor improperly stated his personal opinion, the court held that the comment did not render the proceeding fundamentally unfair. *Id.* Similarly, in the case at hand, the prosecutor's statement was probably improper. However, the statement was no more egregious than the one in *Kennedy,* and, therefore, did not render Petitioner's trial unfair.[10]

■ Petitioner next argues that the prosecutor improperly commented on defense counsel's tactics during closing argument. The prosecutor stated:

> Don't let their grasping at straws— They're throwing in all kinds of irrelevant material that has nothing to do with whether or not that defendant committed the rape. Don't let their clouds of smoke, these red herrings that are thrown along the pathway to confuse and send you down the wrong path, don't call these reasonable doubts.

(R1404–05). This comment is similar to those found in *United States v. De La Vega,* 913 F.2d 861, 872 (11th Cir.1990), *cert. denied,* 500 U.S. 916, 111 S.Ct. 2011, 2012, 114 L.Ed.2d 99 (1991). In that case, the court held that remarks made by the prosecutor, including allegations that defense tactics

were "smoke screens," while improper, were not so pronounced and persistent as to permeate the entire atmosphere of the trial. *Id.*

■ Finally, Petitioner argues that, during closing argument, the prosecutor's comments appealed to the jury's passions and emotions. The prosecutor stated:

> Mrs. Spell and gentleman, at this time, we are being dragged into the ugliness of the Twentieth Century where babies are being sexually assaulted. Michael Irwin violated the rules that we all live by.

(R1407). Petitioner argues that this comment is similar to comments in a number of cases that were condemned for improperly informing the jury that if they did not convict the defendant, he would be free to commit more crimes.[11] That implication is simply not present in this case. The prosecutor's comment did not infer that Petitioner, if acquitted, would commit more sexual batteries against babies. Rather, the comment merely reflected that Petitioner violated the rules of law pertaining to sexual battery. Such a comment is one upon the evidence and is a conclusory remark that is not so prejudicial as to warrant a new trial.

■ Thus, it is apparent that the prosecutor's comments, by themselves, did not render Petitioner's trial unfair. This Court must now consider whether the comments, taken as a whole, were sufficient to render Petitioner's trial fundamentally unfair. This Court concludes that they were not. Whether Petitioner is entitled to relief on the ground of improper prosecutorial argument depends on "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Kennedy,* 933 F.2d at 914 (citing *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)). In determining whether improper argument rises to this level a court must ask "whether there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome of the guilt or sentencing

---

10. Additionally, the trial court noted that Petitioner had severely challenged the detective's job performance (R1385). Thus, it was permissible for the State to support the detective's credibility.

11. Petitioner cites to *Grant v. State,* 194 So.2d 612 (Fla.1967); *Russell v. State,* 233 So.2d 154 (Fla. 4th DCA 1970); *Rahmings v. State,* 425 So.2d 1217 (Fla. 2d DCA 1983).

proceeding would have been different." *Id.* (citing *Williams v. Kemp,* 846 F.2d 1276, 1283 (11th Cir.1988)). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

This Court cannot conclude that Petitioner is entitled to relief under this standard. Instead, considering the totality of the circumstances, the challenged arguments did not render the trial fundamentally unfair.

## II. RECURRENCE OF SEXUAL ATTACKS

Petitioner claims that the trial court erred in allowing the State, Dr. Nancy Dawber, and Mrs. Christine Irwin to comment on the fact that the sexual attacks were recurrent over the course of several months. Petitioner argues that such comments were prejudicial because he could have been charged and convicted for each instance he sexually touched the victim. Therefore, Petitioner argues, because he was only charged for one count, he should have been tried for only one count.

 In order for an evidentiary ruling to be cognizable in habeas corpus it must deprive the state court defendant of fundamental fairness. *Jameson v. Wainwright,* 719 F.2d 1125, 1126–27 (11th Cir.1983) (citing *Nettles v. Wainwright,* 677 F.2d 410, 414 (5th Cir. Unit B 1982)). Evidence of other crimes is generally admissible when such evidence tends to directly establish the requisite intent in the commission of a particular crime, or a common scheme or plan related to the crime for which the defendant is being tried. *Wingate v. Wainwright,* 464 F.2d 209, 211 (5th Cir.1972). This is the rule in the federal courts, even where the defendant has not been convicted of the other crimes shown. *Id.* (citing *United States v. Perkins,* 444 F.2d

1329 (5th Cir.1971). A similar rule is applied in the Florida courts.[12]

Petitioner argues that there was no valid reason to show that the sexual attacks were recurring other than to show Petitioner's bad character or criminal propensity. This argument is without merit. The prosecutor's comments regarding the recurrence of the sexual attacks did not go to Petitioner's bad character or criminal propensity. Rather, they were introduced to establish that Petitioner committed a sexual battery during a specific period of time.

 This was the major issue in controversy. The State was prosecuting an offense committed against a two and one half year old child who was too young to testify as to the exact date on which the offense occurred. Thus, the State charged that a sexual battery occurred during a specified period of time.[13] Under these circumstances, it was impossible for the State to be more specific as to when the alleged sexual battery occurred within the parameters of the dates set forth in the information. It is ridiculous for Petitioner to essentially submit that the State should have filed an information or obtained an indictment charging him with a separate sexual battery on each day throughout the entire period of time. Surely this is not what Petitioner would have wanted. Therefore, the trial court did not err in allowing the State to comment on the recurrence of the sexual attacks, as the comments did not go to Petitioner's bad character or criminal propensity, but went to a main issue in controversy. Petitioner is not entitled to habeas relief on ground three.

### Ground Four

Petitioner claims that the trial court erred in denying his motion for new trial based on newly discovered evidence.[14] In evaluating

---

12. Under Florida Statute 90.404(2), evidence of other crimes, wrongs, or acts is admissible when relevant as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity. *See also Williams v. State,* 110 So.2d 654, 662 (Fla.1959) (holding that evidence of other crimes is admissible and relevant if it tends to show a common scheme or plan).

13. The State initially alleged that the sexual battery occurred sometime between March 1, 1983, and July 18, 1983. The State later narrowed the time period down from about March 17, 1983, to July 18, 1983.

14. Petitioner argues that if the Irwin's family doctor had testified as to the recurring problem of redness in the victim's genital area, months after Petitioner's arrest, there would not have

this claim, the threshold question is whether the allegation of newly discovered evidence rises to a constitutional dimension cognizable in a federal habeas corpus action. *Drake v. Francis,* 727 F.2d 990, 993 (11th Cir.1984). This Court concludes that it does not.

 In order for a claim of newly discovered evidence to justify habeas review, the evidence must bear on the constitutionality of the defendant's conviction. *Drake,* 727 F.2d at 993. In *Drake,* the jury convicted Drake of murder and recommended that the court sentence him to death. *Id.* At trial, a codefendant testified that Drake committed the murder. *Id.* However, a few years later, the codefendant recanted his prior testimony and signed an affidavit professing Drake's innocence and admitting his own guilt. *Id.* Thereafter, Drake filed a petition for habeas corpus relief. *Id.* The Eleventh Circuit Court of Appeals, in holding that the bare assertion of a third party confession is insufficient to warrant habeas relief, provided that "the role of habeas corpus is limited to consideration of challenges to the legality of a conviction; it may not be used to retry the defendant's innocence or guilt." *Id.* at 994.

Similarly, in the case at hand, the evidence does not bear on the constitutionality of Petitioner's conviction, but is simply relevant to his guilt or innocence. The Supreme Court has expressly dictated that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not ground for relief on federal habeas corpus." *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Thus, Petitioner is not entitled to habeas corpus relief on ground four.

Accordingly, it is

**ORDERED** that Petitioner's petition for writ of habeas corpus (Docket No. 1), be **denied,** Respondent's motion to dismiss (Docket No. 8) be **granted,** and this cause be **dismissed.**

**DONE AND ORDERED.**

been enough evidence against him to result in a conviction. Appellant's Brief at 44.